**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIRECTV, Inc.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. Civil _____** |
| | § | |
| **MICHAEL ROMAN,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF DIRECTV'S ORIGINAL COMPLAINT**

Plaintiff, DIRECTV, Inc. ("DIRECTV"), by its attorney, complaining of the Defendant herein respectfully sets forth and alleges, upon information and belief, as follows:

**I.  PRELIMINARY STATEMENT**

1.      This lawsuit involves the surreptitious possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming.  Federal communication and state laws prohibit the assembly, distribution, possession and use of the devices and equipment in question.  DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendant for the assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals.

**II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS &
SUPPORTING SATELLITE PIRACY CLAIMS**

2.      DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States.  Over the company's life, DIRECTV has invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment

purposes (the "Satellite Programming").  DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth.  Those signals are then broadcast back to Earth.  DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish") designed to capture satellite signals.  The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver") which is then connected by cable to a television monitor.

3.      While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not intended to be usable without paying DIRECTV a fee to use its television broadcast services.  To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV uses encryption technology to digitally scramble the signal making the signal unusable until it is unscrambled.  The Satellite Receiver is the component that makes descrambling possible.  Each Satellite Receiver contains a removable access card that manages the opening and closing of television channels offered by DIRECTV (the "Access Card").  An access card is identical in size and shape to a credit card, but also holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish.  When properly operated, access cards can be electronically programmed by DIRECTV to close or open television channels.  It is, however, the programmable nature of these access cards that is the primary basis for this dispute.

4.      Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing customers to view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite.  Through the Access Card, DIRECTV can provide many different levels of service

to individual customers.  Each customer usually pays for the service on a monthly basis.  In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV.  The Access Card records those purchases.

5.      DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming.  Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to as "Pirate Access Devices").  The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company.

6.      The Defendant in this action is a resident of the Commonwealth of Pennsylvania.  Upon information and belief, the defendant has purchased and used illegal Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV.

### *DIRECTV Obtained Evidence Related to Distributors of Pirate Access Devices*

7.      On or about January 28, 2002, DIRECTV executed a writ of seizure, with the assistance of the U.S. Marshalls Office, on Michael Worley and EQ Stuff, Inc., doing business as "EQ Stuff." Pursuant to the order, DIRECTV obtained business records from EQ Stuff.  Importantly, the business records obtained by DIRECTV evidence an ongoing illegitimate

enterprise which focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications broadcast by DIRECTV.   The records included orders, invoices, electronic communications, shipping documentation, product descriptions and customer lists related to the distribution of Pirate Access Devices.

8.      EQ Stuff specialized in the sale of pirate access devices and other equipment used to illegally receive DIRECTV's satellite signals, thus enabling users to watch DIRECTV programming without payment to or authorization from DIRECTV.  Michael Worley and EQ Stuff, Inc. were physically located in St. Augustine, Florida, but due to the expansive reach of internet sales, EQ Stuff was able to conduct business nationwide.  EQ Stuff customers ordinarily placed orders through several websites operated by EQ Stuff known as eqstuff.org, eqbl.org, and eqstuff.ca. The business records obtained evidence the purchase made by Defendant.   Each record obtained confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming.  More pertinently, the business records obtained pursuant to these events evidence defendant's purchase of Pirate Access Devices.  The device or item was then shipped via United States mail or commercial carrier.  The device in question was primarily of assistance in the unauthorized decryption of DIRECTV Satellite Programming.  In reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the defendant for purchase, possession, modification, manufacture, assembly, and/or use of Pirate Access Devices.

9.      The defendant's activities violate federal telecommunication and wiretapping laws and state statutory and common law.  As a result of the defendant's decision to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV

brings this action seeking damages and injunctive relief against the defendant's continued possession and/or use of Pirate Access Devices.

### III. JURISDICTION

10.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

11.     This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§ 521, et seq.) (the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. § 2510, et. seq.), and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals.  This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.  Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over the parties in this action.  The activities over which DIRECTV complains and giving rise to this action took place in the Commonwealth of Pennsylvania; more particularly, the defendant's acts of violating federal laws and DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Eastern District of Pennsylvania.  Further, upon information and belief, the defendant resides within the Commonwealth of Pennsylvania; thus, this Court has personal jurisdiction over the defendant.

## IV. <u>VENUE</u>

13.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

14.     Venue is proper in this the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §§ 1391(b) as this action arises under the laws of the United States and the defendant resides within the Commonwealth of Pennsylvania.  Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Pennsylvania (28 U.S.C. § 118).

## V. <u>PARTIES</u>

15.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

16.     Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California.  As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing the integrity of its satellite transmissions of television programming and in prohibiting the unauthorized reception and use of the same.

17.     As part of its efforts to combat piracy, DIRECTV periodically develops and administers electronic countermeasures, which are commonly referred to in the satellite piracy community as "ECMs."  ECMs involve sending a stream of data that targets access cards using known modified software code and disables those access cards.

18.      In response to DIRECTV's ECMs, and in particular to a highly successful ECM known in the pirate community as "Black Sunday," satellite pirates have developed devices referred to as, among other things, including but not limited to bootloaders, dead processor boot

boards, glitchers, HU loaders, emulators, unloopers, and programmers that employ hardware and software and/or a combination of purchases to restore pirate access cards' ability to illegally circumvent DIRECTV's encryption protection and view DIRECTV programming.

19.     Defendant, Michael Roman ("Defendant Roman"), resides and/or conducts business at 105 Furches Road, Peach Bottom, Lancaster County, Pennsylvania 17563.  Upon information and belief, Defendant Roman purchased one or more Pirate Access Devices from EQ Stuff as described below.  Defendant Roman placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.  Specifically, these illegal purchases included the following transactions:

    a.     Upon information and belief, on or about October 26, 2001, Defendant Roman purchased one (1) "EQ Bootloader" from EQ Stuff.  The order was shipped to Defendant Roman at Defendant's address in Peach Bottom, Pennsylvania.

20.     Defendant Roman is sometimes hereinafter referred to as "Defendant."

21.     Upon information and belief, Defendant received Pirate Access Devices through various mail sources, effectively importing such illegal devices into the Commonwealth of Pennsylvania; the Defendant has a reason to know that such device is used to illicitly decrypt Satellite Programming.   Upon information and belief, Defendant displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV.   Importantly, Defendant's possession and use of Pirate Access Devices provides Defendant access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendant was capable of viewing without authorization may easily reach thousands of dollars in a single year.

22.     On information and belief, DIRECTV alleges that Defendant received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable Defendant to unscramble, receive, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendant.

## VI. <u>DISCOVERY OF ILLEGAL CONDUCT</u>

23.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

24.      DIRECTV devotes significant resources to preventing the unauthorized reception of its Satellite Programming and identifying persons or businesses engaged in such illegal activity.  Despite these efforts, DIRECTV first obtained the mass of records after the raids as indicated in the foregoing paragraphs. More importantly, DIRECTV first discovered Defendant's identity and involvement in pirating Satellite Programming after spending significant time analyzing and interpreting those records.

## VII. <u>CAUSES OF ACTION</u>

### <u>Count 1 - Damages for Violations of Cable Communications Policy Act</u>
#### (47 U.S.C. §605(e)(3)(C))

25.     DIRECTV incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

26.     DIRECTV alleges on information and belief, that the Defendant effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite

Programming where the Defendant are located, or by such other means which are unknown to DIRECTV and known only to Defendant.

27.     The Defendant's acts violate federal law.  The Defendant, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception, or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, upon information and belief, Defendant divulged or published the existence contents, substance, purport, effect or meaning of such satellite communications.   Further, upon information and belief, Defendant used such communications for Defendant's own benefit or for the benefit of others who were not entitled to such communications.  The of these acts is a practice prohibited by 47 U.S.C § 605(a).

28.     DIRECTV is a person aggrieved by the Defendant's violations of 47 U.S.C. § 605 and is authorized to institute this action against Defendant pursuant to 47 U.S.C. § 605(e)(3)(A).

29.     Defendant's violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming.   DIRECTV is entitled to costs, reasonable attorneys' fees, actual damages suffered, and profits obtained by Defendant attributable to Defendant's illegal conduct.

30.     Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. § 605(a).

**Count 2 - Damages for Violations of 18 U.S.C. § 2511**

31.     DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

32.     For further cause of action, DIRECTV alleges that Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV.  Defendant further disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.  Upon information and belief, Defendant further intentionally used or endeavored to use the contents of electronic communications knowing, or having reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C § 2511.

33.     DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2511.

34.     Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by the Defendant as a result of Defendant's conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for the day Defendant acted in violation of 18 U.S.C. § 2511.

### Count 3 - Damages for Possession, Manufacture, and/or Assembly of Electronic, Mechanical or Other Device or Equipment
### (18 U.S.C. § 2512)

35.     DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

36.     By way of its third cause of action, DIRECTV alleges that Defendant possessed, manufactured, and/or assembled an electronic, mechanical or other device knowing, or having a reason to know, that the design of such device renders it primarily useful for the purpose of the

surreptitious interception of wire or electrical communications and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.  More particularly, the Defendant, or someone at Defendant's direction, sent and/or received Pirate Access Devices by means of the United States Postal Service or commercial mail carrier.

37.    DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2512.

38.    Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of Defendant's conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendant acted in violation of 18 U.S.C. § 2512.

**Count 4 - Damages for Willful Assembly or Modification
of Devices or Equipment
(47 U.S.C. § 605(e)(4))**

39.    DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

40.    Upon information and belief, Defendant knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity.  Upon information and belief, Defendant actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming.  Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV

Receivers, Defendant engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

41.     Such conduct by the Defendant violates 47 U.S.C § 605(e)(4) and such activity entitles DIRECTV to statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

42.     DIRECTV is a person aggrieved by the Defendant's independent violations of 47 U.S.C. § 605 and is authorized to institute this action against the Defendant pursuant to 47 U.S.C. § 605 (e)(3)(A).

## Count 5 - Civil Conversion

43.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

44.     By virtue of the conduct set forth above, Defendant has unlawfully converted DIRECTV's property for Defendant's own commercial use and benefit.

45.     Such conversion was done intentionally and wrongfully by Defendant to deprive DIRECTV of its proprietary interests and for Defendant's direct benefit and advantage.

46.     Due to Defendant's wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

## Count 6 – Possession of Devices for Theft in Violation of Pennsylvania Consolidated Statutes (18 Pa. C.S. § 910)

47.     DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

48.     Upon information and belief, Defendant knowingly possessed, used or assembled an unlawful telecommunication device that could be used for commission of a theft of

DIRECTV's telecommunication service or to decrypt, acquire of facilitate the decryption or acquisition of DIRECTV telecommunication service without the consent of DIRECTV.

49.     Such conduct by the Defendant violates 18 Pa.C.S. §910(a)(1)(i) and such activity DIRECTV entitles to statutory damages in a sum not more than $10,000, as the Court considers just for each violation. 18 Pa.C.S. §910(d.1)(2).  In addition to statutory damages, DIRECTV is further entitled to recovery of reasonable attorney fees and costs, including investigation, testing and expert witness fees. 18 Pa.C.S. §910 (d)(2)(iv).

50.     DIRECTV is a person aggrieved by the Defendant's independent violations of 18 Pa.C.S. §910 and is authorized to institute this action against the Defendant pursuant to Pennsylvania law.

## VIII. REQUEST FOR INJUNCTIVE RELIEF

51.     DIRECTV realleges and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     DIRECTV further alleges that unless restrained by this Court, the Defendant will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. § 605.

53.     The violations of 47 U.S.C. § 605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

54.     DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendant's unlawful conduct.  In addition to diminishing DIRECTV's revenues, the Defendant's unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality

programming thereby impairing DIRECTV's ability to enhance its future growth and profitability. DIRECTV has no adequate remedy at law to redress the violations set forth above.

    55.    Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. § 2520(b)(1). DIRECTV requests that Defendant be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. <u>PRAYER</u>

    WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendant in the form as follows:

a.    Declare that Defendant's assembly, modification, distribution, and possession of illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or Defendant's assistance in the performance of such unauthorized actions, is a violation of 47 U.S.C. § 605, and 18 U.S.C. §§ 2511 & 2512, and PA.C.S. § 910;

b.    Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. § 605, plus an additional $100,000.00 for each violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 47 U.S.C. § 605;

c.    Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendant violated 18 U.S.C. § 2511 and/or § 2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 18 U.S.C. §§ 2511 or 2512;

d.    Alternatively, award DIRECTV statutory damages of $10,000 for each violation of PA.C.S. § 910;

e.    In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin Defendant, and all persons in active concert or participation with him, from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f.      That this Court award DIRECTV punitive damages as provided by statutory law;

g.      That this Court award DIRECTV its costs, including reasonable attorneys' fees, pre-judgment and post-judgment interest, and

h.      Such other relief to which DIRECTV may be entitled.

Respectfully submitted,

January 27, 2004                            _____

C. Paul Scheuritzel
Justin K. Miller
MARVIN, LARSSON, HENKIN
   &  SCHEURITZEL
Centre Square West, Suite 3510
Philadelphia, PA  19103
215-656-4200
Attorney for Plaintiff, DIRECTV, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIRECTV, Inc.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. Civil_____** |
| | § | |
| **MICHAEL ROMAN,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>DIRECTV'S DISCLOSURE OF INTERESTED PARTIES</u>**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Rules of Court, DIRECTV, Inc., Plaintiff in this case, provides the following information to the Court:

DIRECTV, Inc., a California corporation, is a wholly owned subsidiary of DIRECTV Enterprises, LLC, a Delaware Limited Liability Company, which is a wholly owned subsidiary of DIRECTV Holdings, LLC, a Delaware Limited Liability Company, which is a wholly owned subsidiary of Hughes Electronics Corporation, a Delaware corporation.

Thirty-four percent of the shares of Hughes Electronics Corporation are held by Fox Entertainment Group, Inc., a Delaware corporation, which is a majority-owned subsidiary of News Publishing Australia Limited, a Delaware corporation, which is a wholly owned subsidiary of The News Corporation Limited, an Australia corporation.

The shares of Hughes Electronics Corporation, Fox Entertainment Group, Inc. and The News Corporation Limited are publicly traded.

                                        Respectfully submitted,


January 27, 2004                        _____
                                        C. Paul Scheuritzel
                                        Justin K. Miller
                                        MARVIN, LARSSON, HENKIN
                                            &  SCHEURITZEL
                                        Centre Square West, Suite 3510
                                        Philadelphia, PA  19103
                                        215-656-4200
                                        Attorney for Plaintiff, DIRECTV, Inc.

# CIVIL COVER SHEET

JS 44 (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace no supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)  PLAINTIFFS**

DIRECTV, INC.

**(b)** County of Residence of First Listed Plaintiff  Los Angeles, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANT(S)**

MICHAEL ROMAN

County of Residence of First Listed Defendant Lancaster, Pennsylvania
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Marvin, Larsson, Henkin & Scheuritzel
Centre Square West, Suite 3510
Philadelphia, PA  19102        (215) 656-4206

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINICPAL PARTIES (Pace an "X" in One Box for Plaintiff  (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of  Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of  Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place and "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damages Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS – Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environment Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence Habeas Corpus;<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdiction statutes unless diversity.)

47 U.S.C. § 605; 18 U.S.C. § 2511, 2512.  Possession, sale and/or use of prohibited piracy devices.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $** 100,000.00    CHECK YES only if demanded in compliant:    JURY DEMAND ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE_____   DOCKET NUMBER_____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____